## LOSS OF A LEASE IN ITS REFORMATION.

Circuit Court of Fairfield County.

LOUIS W. MARKS v. RUSHVILLE GAS & OIL CO.

Decided, September 18, 1908.

*Lease—Agreement to Reform—Record of Cancellation on Margin— Failure to Record New Lease—Property Re-leased to a Third Party—Knowledge—Possession—Injunction—Section 4112a.*

1. Where at the request of an owner of land an oil and gas company holding a lease of the land consents that the lease shall be reformed, and by agreement this is done by cancelling the old lease and executing a new one, but the lessee fails to have the new lease recorded, and the owner of the land subsequently re-leases it to a third party, the company holding the first lease will not be heard to claim that the cancellation of its lease was without effect because its president in signing the cancellation acted on the belief that the cancellation would not be effective until the new lease was recorded.

2. The fact that the company had drilled within certain territorial limits of the tract described in the lease but not on the leased land does not constitute such actual and open possession of the land as to give effect to the unrecorded lease under the provisions of Section 4112a.

3. Where a lease provides by its terms that it may be surrendered by the parties, the endorsement thereon of its cancellation and surrender, whether such endorsement is entitled to record on the margin of the lease record or not, constitutes a legal surrender and cancellation and surrender of the lease, notwithstanding the statutory provision that any interest in land must be granted by an instrument duly executed, acknowledged and attested by witnesses.

4. A lease for oil or gas has no force or validity except between the parties until the same is filed for record in the recorder's office of the county in which the leased land is situated, and a subsequent lessee with knowledge, whose lease is recorded, is entitled to hold the premises as against all persons claiming under the prior unrecorded lease.

*C. W. McCleery, F. M. Acton* and *M. A. Daugherty*, for plaintiff.

*C. D. Martin, A. W. Mithoff* and *F. S. Monnett*, contra.

DONAHUE, J.; TAGGART, J., and CRAINE, J., concur.

This case comes into this court on appeal and is an action brought by the plaintiff, Marks, to enjoin the Rushville Gas & Oil Company from interfering with his possession of thirty-two acres of land described in his petition, and from drilling thereon for oil or gas, he claiming to be the owner of the right by grant from Coplin, the owner of the land. The Rushville Gas & Oil Company answers that petition, averring that Marks is not the owner of any right in said property, but that the Rushville Gas & Oil Company is the owner of a valid lease duly executed and acknowledged by Coplin, who it is admitted was the owner of the property in fee simple, dated the 22d of June, 1906, and recorded March 11, 1907, long prior to the execution of this plaintiff's lease, and that the same was never surrendered or canceled, but that a pretended cancellation was obtained by fraud and placed on record, and that notwithstanding this they are the owners of the same. That is denied by the reply, and upon the trial of this case in this court leave was taken to make other parties defendants, who were jointly interested with plaintiff in this case claiming that Marks was only holding as trustee for himself and others who were jointly interested with him in the lease, and who participated in the taking of the same from Coplin, and that the lease was fraudulently obtained, and that these other parties entered into a guaranty to protect Coplin against any damages that he might suffer by reason of any suit being brought against him by the defendant for any violation of the terms of his lease to it. To this amendment to answer and cross-petition of the defendant there is a general denial filed.

The lease to Marks is dated April 8th, 1908, and was recorded April 9th, 1908. This action was commenced April 11, 1908, to enjoin the Rushville Gas & Oil Company.

The lease under which the Rushville Gas & Oil Company claims was dated the 22d day of June, 1906, and recorded March 11, 1907. What is claimed to be a surrender and cancellation is dated February 29, 1908, and was entered on the margin of the record of the lease in the recorder's office on March 17, 1908. The evidence shows its physical delivery on the 2d of March, 1908.

It also appears that contemporaneously with the surrender of this lease of June 22d, 1906, a new lease was executed by Mr. Coplin to the Rushville Gas & Oil Company. That lease was never placed on record. The reason for this change of lease was the fact that in the original lease a cemetery lot was included by mutual mistake, when it was not intended by either party to be included. Mr. Coplin applied to the directors to have a change and reformation of that lease and it was agreed that might be done. At the meeting at which that was done, the evidence informs us that a suggestion was made by the attorney of the defendant company, who was also the secretary of the company, that the lease could be reformed by canceling it, and a new lease executed, and it is apparently the uncontradicted evidence that that was the method acceptable to all parties concerned. It is not important to this court whether that was the best method; it was one method that would work a reformation, and it seemed to be the understanding of all parties—the directors of the company, Coplin and the attorney of the company—that it would be done in this way at the time the reformation was agreed upon. There is some discrepancy in the testimony as to how that was to be accomplished—in regard to the surrender of the old lease and the delivery of the new lease. It is insisted that the intention was that the old lease should be surrendered with a cancellation on the back thereof, after the new lease was consummated; or some of the witnesses say the motion originally put was, after the new lease was recorded; that is, that the motion was proposed in that language, and put by the president of the company to the directors "after the new lease should be consummated."

It is now claimed by the Rushville Gas & Oil Company that this secretary and the "plaintiff, Marks, and others," is the language of the cross-petition, entered into a fraudulent conspiracy with the intent and purpose of working a fraud upon this company and depriving it of its rights in this property and secured by fraud the signature of the president to this cancellation. It would seem unnecessary for this court to say that that allegation of the cross-petition is not sustained by a single syllable of evidence in this case. The evidence is uncontradicted that

Marks and the other gentlemen identified in interest with him had nothing whatever to do with this lease, until the day the contract of lease was entered into with them—April 8th, 1908. There is no evidence of any kind or character that points to a conspiracy between the secretary of this company and Marks and the other persons made parties by this amendment to answer and cross-petition. In fact, when they knew the condition of this lease, all had been done that was contemplated to be done under the arrangement made at the meeting of the directors at the time they kindly consented that the reformation might be made. There is no showing that the secretary acted in bad faith. He might have exercised bad judgment in this matter. There might have been carelessness connected with the performance of his duties, or with the performance of the duties of the president, but there is nothing to show that either of them acted fraudulently, or that Mr. Kerr's signature was obtained by fraud in that transaction, or that any fraud entered into the negotiations, or into the mind of the secretary, or any one charged with the duty of reforming this lease.

It is true that there is some evidence that, when this lease was offered to Mr. Kerr for his signature, it was simply shoved over to him with the statement, "here is another paper for you to sign," and he signed it. That is no excuse for Mr. Kerr. He was charged with the duty of guarding and defending the interests of this company. He can read and write. He is a man learned in the sciences and learned in the law, a man who knew that he would be held to answer for his acts and that he could not negligently and carelessly put his signature to any paper and say, "I did not know what I was doing." Courts of equity are organized to protect the weak and ignorant, who are swindled by the machinations of others, because of their inability to protect themselves, but a man who is clothed with reason and charged with responsibility, when he signs his name to a paper, courts will hold that he contemplated the effect of the paper and the consequences thereof. That act was the voluntary act of Mr. Kerr; he was not under duress and it was not procured by fraudulent misrepresentation of any kind or character. If he did not under-

stand it, the secretary did, and we hold he was acting in good faith. We might say that it is an unfortunate thing that through later manipulation these men are called on to suffer a loss by reason of a disposition to do a kindness to Mr. Coplin.

The alleged cancellation on the back of the lease is as follows:

"RUSHVILLE, OHIO, Feb. 29, 1908.

"In consideration of one dollar and other considerations, the within lease is hereby canceled and surrendered and not binding on either party.

"THE RUSHVILLE GAS & OIL COMPANY,

"By R. W. KERR, *Pres.*"

What is the effect of that cancellation and surrender of this lease? What is the effect of the new lease which is made and unrecorded?

If a court of equity were to pay no attention to statutory law, it would not take this court long to declare that transaction did not deprive this company of its interest in its lease, and that they are still the owners of the same, and are entitled to all the rights of a lessee in the property; but equity must follow the law. One of the maxims of equity is that equity must follow the law and it is not for this court to pretend to more wisdom than the Legislature of the state; it is our duty to apply the law as we find it, for the public conscience is reflected in the statutory law of the state, just as much as in the principles of equity. [Here the court read Section 4112a, Revised Statutes of Ohio, also the paragraph of the syllabus relating to this section, 59 O. S., 420].

There is some claim made that this defendant company was in actual possession of the land, because it had drilled within certain territorial limits named in the lease but not on the lease itself. We think that was not an actual possession, not an open, notorious and adverse possession.

When a man is in possession of another's farm, exercising authority over it, doing that which without grant or license he would have no right to do, any person buying or leasing that land takes it with whatever rights the person in possession has—

whatever they may determine to be.   This defendant not being in open possession of the land, this court can not say that it is within the provisions of this section.   Its unrecorded lease is absolutely a nullity for all purposes and the evidence touching knowledge of that lease is not important.

That being true the sole question remaining is whether this case in fact was a cancellation.   Was there a surrender of the original lease?   The statute authorizes the recording of this cancellation on the margin of the lease.   Counsel have argued with a good deal of vigor and have cited quite a number of authorities to the effect that there is no provision made for the cancellation of a lease in this way, and that the statutory provision is that any interest in land must be granted in certain ways —that is to say it must be duly executed, acknowledged and attested by witnesses.   But turning to this particular lease we find that it has within its terms a provision for its cancellation and surrender, which is as follows:

"It is agreed that the second party, its successors and assigns shall have the right at any time to surrender up this lease and be released from all moneys due and conditions unfulfilled, then and from that time this lease and agreement shall be null and void and no longer binding  on either party and the payments which have been made, be held by the party of the first part as the full stipulated damages for the non-fulfillment of the foregoing contract, that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns, which is fully understood and agreed to by party of the first part."

. This lease in terms provides that it may be surrendered by the parties.   We think that this indorsement upon it expresses a cancellation or surrender, and whether it is entitled to record upon the margin of the lease record or not, certainly it carries with it the effect of a surrender and cancellation that would prevent and estop either party from bringing an action upon it.  Suppose that all had been done to protect the rights of this company required by law, and that instead of neglecting to file the lease that was given in exchange for this, that on the next day after

its execution it had been recorded in the recorder's office of this county, and some dispute arose between Coplin and the Rushville Company, under the terms of that paper, would not the rights of the Rushville Company be determined under the new lease taken and recorded in the place of the old one? The fact that they failed to record this could not change the result of this lawsuit. The same law would apply except as to the right of the parties taking a lease afterwards and recording it first.

We have already said that up to the time of the cancellation or making of the new lease that we think no fraud entered into the mind of anybody. Suppose that Coplin had such a notion in his mind; it was hardly possible. he had, because he would suppose that the Rushville Company would attend to its business. After he talked to Shaeffer the idea grew upon him; the first time that he knew that he had a right to re-lease it and that a new lease would take precedence over the prior unrecorded lease, was the day he actually re-leased it. Whatever was done by his counsel can not have a retroactive effect; it can not reach back to the day when everybody to this lease agreed to reform it.

So that we must measure that contract by what transpired then; and we must measure this new lease by what occurred upon that day it was executed. It is not the business of this court to say what these men should have done morally. That is not our affair. We have filled our mission when we have determined the law of this case, and it is our duty to apply the law as it is written and as the Supreme Court of Ohio has expounded it. With this statute and adjudication before us, the truth is that evidence touching knowledge is not important. The only questions are: Was this cancellation obtained by fraud? If it is not obtained by fraud, what effect as a legal proposition is to be given this lease to Marks? We think there is absolutely no fraud proven at the time this cancellation was made, and the first lease to the Rushville Company was surrendered to Coplin and a new lease executed and delivered. There was no intent on the part of anybody to wrong the company, at least not on the part of its officers. With Coplin it must deal at arm's length; if through courtesy, kindness and consideration

it correct a mistake in his lease and neglect to protect itself—that is no defense here. With their own agents, attorneys and officers, they are not supposed to deal at arm's length. If we found that the officers of this company had entered into a fraudulent conspiracy with Marks and others, it would be not only our duty but our pleasure to declare the cancellation void. But we find no evidence to warrant such conclusion; we think the cancellation was in good faith with proper motives and proper purposes. After that cancellation and surrender of the old lease and the execution of the new lease, that new lease then became the muniment of title of the Rushville Gas & Oil Company, and it can not protect the company, because it was unrecorded.

Therefore we conclude that the injunction should be made perpetual, the answer and cross-petition with amendment thereto will be dismissed with costs, motion for a new trial may be filed and will be overruled, and exceptions noted on behalf of defendant, statutory time for filing bill of exceptions, and twenty days for finding of fact.